IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

DEBRA S.,

                Plaintiff,

   v.                                  Civil Action No.
                                                    3:22-CV-0173 (DEP)

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

                Defendant.

---

APPEARANCES:                                OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM        PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

FOR DEFENDANT

SOCIAL SECURITY ADMIN.             MICHAEL L. HENRY, ESQ.
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER[1]

---

[1]    This matter is before me based upon consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled, and, accordingly, is ineligible for the disability insurance ("DIB") and supplemental security income ("SSI") benefits for which she has applied. For the reasons set forth below, I conclude that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence.

I.  BACKGROUND

Plaintiff was born in November of 1979, and is currently forty-three years of age. She was thirty-eight years old both on the date she alleges she became disabled and at the time she filed her applications for benefits. Plaintiff stands five feet and one inch in height, and weighed between approximately one hundred and eighty-five and two hundred and fifteen pounds during the relevant time period. Plaintiff testified at the administrative hearing that she is divorced and lives with one of her adult children in a first-floor apartment in Binghamton, New York.

In terms of education, plaintiff graduated from high school. She reports that she most recently worked for many years at a retail store, first as a crew member and later for a period as an assistant manager.

Plaintiff alleges that she suffers from pain in her left knee, hip, and lower back, asthma, and depression.  During the relevant period, plaintiff treated for her impairments with sources at UHS Vestal Primary Care, Lourdes Hospital Emergency Department, Lourdes Orthopedic, and Syracuse Orthopedic Specialists.

Plaintiff testified at the administrative hearing that she has been experiencing significant pain in her lower back, left hip, and left knee following a fall in 2018.  She does not currently take any pain medication for her knee and uses only ice, which helps minimally.  Most treatments attempted have not helped to alleviate her pain, and she has been referred to a rheumatologist to further assess the cause of that pain.  Plaintiff reported that she can stand for fifteen minutes before her back begins to hurt too much, and that she has a cane, although she does not use it often anymore.  She can do chores around the house but has to take breaks every few minutes because of her pain.  Plaintiff does not have a driver's license and stated that, while she used to be able to walk everywhere she now has to take buses or cabs.  Plaintiff further reported that she suffers from depression, but feels generally fine on her prescribed medication.

II.     PROCEDURAL HISTORY

    A.     Proceedings Before the Agency

As is relevant to the current appeal, plaintiff applied for DIB and SSI payments under Titles II and XVI of the Social Security Act, respectively, on September 14, 2018. In support of her applications, she claimed to be disabled due to left knee pain, left hip pain, left hip arthritis, back spasms, asthma, and depression, and identified August 31, 2018, as her claimed onset date of disability.

A hearing was conducted on October 21, 2020, by Administrative Law Judge ("ALJ") Robyn L. Hoffman to address plaintiff's applications for benefits. ALJ Hoffman thereafter issued an unfavorable decision on April 21, 2021. That opinion became a final determination of the agency on January 25, 2022, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

B.   The ALJ's Decision

In her decision, ALJ Hoffman applied the familiar, five-step sequential test for determining disability. At step one, she found that plaintiff had not engaged in substantial gainful activity during the relevant period. The ALJ next found at step two that plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform basic work functions, including osteoarthritis affecting the left hip, left knee degeneration, and degenerative changes of the lumbar spine. As part of

4

her step two finding, ALJ Hoffman also concluded that plaintiff's alleged diabetes mellitus, hypertension, hyperlipidemia, asthma, carpal tunnel syndrome ("CTS"), obesity, and depression are not severe impairments.

At step three, ALJ Hoffman examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed conditions set forth in those regulations, specifically considering Listings 1.15, 1.16, 1.18, 11.00, and 14.00.

ALJ Hoffman next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a range of work at the light exertional level, as defined by the controlling regulations, with the following exceptions:

> she can occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; sit for up to six hours; and stand and walk for six hours, all in an eight hour workday with normal breaks. She can frequently climb ramps or stairs; she can occasionally climb ladders, ropes, or scaffolds; and she can perform frequent stooping, kneeling, crouching, and crawling. The claimant should avoid exposure to excessive amounts of respiratory irritants such as dust, odors, fumes, gases, and extreme hot and cold temperatures.

ALJ Hoffman went on to step four and concluded that plaintiff is

unable to perform her past relevant work. She then proceeded to step five and found, without the benefit of testimony from a vocational expert, that there remains a significant number of jobs that plaintiff can perform in the national economy, relying on Medical-Vocational Guideline 202.21 and Social Security Rulings ("SSRs") 83-14 and 85-15. Based upon these findings, ALJ Hoffman determined that plaintiff was not disabled at the relevant times.

C. This Action

Plaintiff commenced this action on February 23, 2022.[2] In support of her challenge to the ALJ's determination, plaintiff argues that the ALJ (1) failed to properly assess the nature and extent of her pain, which in turn led to an improper evaluation of the medical opinion evidence, (2) failed to find that plaintiff's CTS caused limitations that should have been accounted for in the RFC finding, and (3) failed to consult a vocational expert regarding other work plaintiff could perform despite the combination of exertional and nonexertional limitations supported by the record. Dkt. No. 9.

Oral argument was conducted in this matter, by telephone, on

---

[2] This action is timely, and the Commissioner does not argue otherwise. It has been treated in accordance with the procedures set forth in the recently enacted Supplemental Security Rules and General Order No. 18. Under those provisions, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

January 31, 2023, at which time decision was reserved.

III.   DISCUSSION

   A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

    B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant

is "presumptively disabled." *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C. <u>Analysis</u>

While plaintiff advances multiple arguments in support of her appeal, the one that I find to be dispositive in this case is the assertion that the ALJ

failed to properly consider the nature of her impairments and her pain, and will accordingly limit my analysis to that contention. Dkt. No. 9, at 9-15. After reviewing her decision, I agree with the plaintiff that the ALJ has failed to adequately consider both the cause and effect of plaintiff's pain when formulating her RFC finding.

In her decision, the ALJ found that the evidence "does not indicate uncontrolled symptoms or inadequate pain relief" that would contradict an ability to perform a range of light work. Administrative Transcript ("AT") at 17.[3] To support this finding, the ALJ cited several reasons, noting (1) normal or mild findings on imaging of plaintiff's lumbar spine and left knee; (2) examination results that, although documenting some positive findings such as loss in range of motion, also included negative findings regarding things like distress, weakness, sensation, and motor strength; (3) plaintiff did not require recurrent hospital, emergency room, or urgent care visits for uncontrolled pain; (4) at times plaintiff reported her pain to be at 4/10, although the ALJ acknowledged that she did also "sometimes report[] high pain levels"; (5) care providers did not recommend surgery, but instead prescribed conservative treatment; (6) providers recommended she engage

---

[3] The administrative transcript is found at Dkt. No. 8, and will be referred to throughout this decision as "AT ___."

in light-to-moderate exercise despite her allegations of disabling pain; and (7) plaintiff's own reports indicate she can perform reasonable activity despite her pain, including walking for twenty minutes before needing to rest and being able to perform "most activities of daily living independently." AT 17-18.

The above reasons are inadequate to support the ALJ's findings regarding the effect of plaintiff's pain because they seemingly ignore key issues documented in the medical records, including most particularly – as plaintiff highlights in her brief – the specific etiology of her pain. Although the Commissioner is correct that it is not entirely clear that physicians were certain of the specific diagnosis that should be attributed to plaintiff's pain, from the record it is nonetheless apparent that physicians accepted that there was a large aspect of her pain that was myofascial rather than associated with her joints. Specifically, in August of 2019, treating physician Dr. Micah Lissy assessed that plaintiff had myofascial muscle pain that was reported to respond somewhat positively to meloxicam. AT 553. In October of 2019, Dr. Lissy stated that, "[c]linically, her pain is consistent with myofascial muscle pain," which was the reason injections had not provided her any relief, although it was again noted that meloxicam had provided some relief. AT 719. In April of 2020, treating physician Dr.

Khadija Raza noted that plaintiff reported she was taking Cymbalta for "chronic pain syndrome" and that she was feeling much better at that time without side effects. AT 623. In October of 2020, Dr. Raza, noting that plaintiff's magnetic resonance imaging ("MRI") testing results did not correlate with her symptoms, referred her to a rheumatologist for further assessment and to see if a diagnosis of polymyalgia rheumatica should be confirmed. AT 861-62.

There are also multiple documented instances in the record of providers observing that plaintiff had significant pain or tenderness to even minimal movement or touch on examinations. AT 414, 546. The evidence includes documentation from two physicians stating that plaintiff's pain appeared not to be wholly attributable to her lumbar spine, hip, or knee, but rather to a myofascial cause that was actively under investigation. The ALJ appears to have overlooked this evidence, given that she explicitly relied on the normal or mild MRI findings as a basis for finding plaintiff's pain was not as severe as alleged. Indeed, reliance on the MRI findings in this manner appears to directly contradict the medical interpretation of the cause of her pain by both Dr. Lissy and Dr. Raza, and the ALJ did not explain why such a substitution of her own interpretation of the medical evidence over those of the medical sources was warranted. *See Riccobono v. Saul*, 796 F.

13

App'x 49, 50 (2d Cir. 2020) (noting that "[t]he ALJ cannot arbitrarily substitute her own judgment for competent medical opinion"). Of note, this is not a matter of differing interpretations that can be extrapolated from the evidence, but rather of the ALJ seemingly ignoring the evidence from the treating physicians as to the source and nature of plaintiff's pain that contradict her conclusion. This was error.

     Similarly, the ALJ tacitly acknowledged that some abnormalities were noted on examinations, but appears to have concluded that the fact that other findings on those same examinations were normal indicates that plaintiff is not as limited by her pain as she alleges. However, especially in light of the ALJ's failure to consider the myofascial aspect of plaintiff's pain, as was already discussed, it is questionable whether the ALJ's reliance on the fact that plaintiff was not routinely noted to have weakness, muscle atrophy, or loss of sensation as being indicative of an ability to perform the level of work encompassed by the RFC finding is well supported. As the ALJ herself acknowledged somewhat within her summary of the treatment evidence, plaintiff was routinely observed to have symptoms of tenderness and reduced range of motion to varying degrees in her lower back, left hip, and left knee throughout the relevant period. *See e.g.*, AT 358, 414, 425, 431, 468, 552, 690, 692, 712, 718, 765. Plaintiff was also observed to

have a limp, an antalgic gait, or to be using a cane on many occasions throughout 2018 and 2019 in particular. AT 358, 414, 468, 552, 718. Although the ALJ was permitted to weigh conflicting evidence, she has not provided a logical rationale for concluding that certain negative findings outweigh other consistent positive findings when concluding that plaintiff's pain did not preclude her from the performance of light work.

      The ALJ's reliance on plaintiff's treatment history, including the facts that sources did not recommend surgery but instead recommended conservative care, and that they even sometimes suggested that the plaintiff engage in light-to-moderate exercise, is also flawed. As to whether surgery was an option, I note that Dr. Lissy explicitly stated that he could not offer plaintiff any surgical option because of the fact that the lack of response to injections had confirmed, for him, that plaintiff's pain is myofascial in nature rather than emanating from her joints. AT 719. It is not clear how the ALJ reconciled Dr. Lissy's statement that surgery was not an option with her finding that the failure to recommend surgery was somehow a comment on the severity of plaintiff's pain. *See Nusraty v. Colvin*, 213 F. Supp. 3d 425, 439 (E.D.N.Y. 2016) ("[A] physician's decision not to recommend surgery is not substantial evidence that a claimant is not disabled.").

The failure to consider the myofascial attribution of plaintiff's pain also calls into question the propriety of the ALJ's reliance on the overall conservative nature of plaintiff's treatment. The record documents that injections did not help alleviate plaintiff's pain, and that she was pursuing other modalities of relief including aquatherapy and medication, with some benefit from taking meloxicam and Cymbalta. AT 553, 623. It is not clear what other treatment should have been expected. As to the ALJ's reliance on notations that Dr. Raza recommended that plaintiff engage in light-to-moderate exercise, I note that those were made in relation to treatment plans for controlling plaintiff's diabetes. AT 813, 831. However, in treatment notes, plaintiff specifically reported that her pain impacted her ability to exercise, or that exercise specifically worsened her pain. AT 662 (plaintiff reporting she cannot walk well enough to exercise), 715 (reporting that she experiences increased symptoms when exercising). It is not clear that the ALJ properly weighed this evidence against the recommendations to exercise or evaluated those recommendations in the context in which they were made.

The ALJ also relied on a lack of hospitalizations or emergency care and plaintiff's own reports that sometimes her pain is less severe as reasons to support her finding that plaintiff's pain is not as disabling as

16

alleged.  The second of these reasons directly contradicts the requirement that the ALJ consider the picture of plaintiff's functioning as a whole when assessing the RFC.  The fact that a claimant's symptoms may wax and wane rather than remain at a constant level all of the time does not mean that the claimant is capable of performing a given level of work on a consistent, full-time basis.  The ALJ's reliance on the fact that plaintiff had periods of lesser pain as a reason for finding she is capable of performing light work therefore fails to show a proper consideration of the full scope of plaintiff's impairments and symptoms.  Further, it is not clear how the ALJ could determine that a lower reported pain level – in this case, 4/10 – translates into a certain level of functioning.

   As to the lack of hospitalization or emergency care, the correlation to the severity of plaintiff's impairments is less than clear.  Plaintiff was receiving regular treatment for her pain symptoms from multiple sources; the fact that she did not go to the emergency room says little of practical value.  Further, the ALJ offers no reason for believing that treatment of lower back, hip, and knee pain, whether as a result of joint or myofascial causes, should have required hospitalization if it was as severe as plaintiff alleges.  These reasons simply have no clear connection with the issues present in this case and therefore do not support the ALJ's findings.

Lastly, the ALJ relied on the fact that plaintiff reported the ability to engage in activities that the ALJ found to be inconsistent with greater limitations, such as the ability to walk for twenty minutes and "to perform most activities of daily living independently." AT 18.  However, it is not clear what the basis for this finding is.  In February of 2020, plaintiff reported that she was supposed to start a seated job through the Medicaid work program soon, but was not sure she would be capable of doing that because of her pain. AT 764.  In June of 2020, she reported to her provider that her pain was limiting her daily activities, specifically causing difficulty with putting on socks and getting in and out of a car.  AT 691.  On that examination, plaintiff was observed to ambulate with difficulty and with an antalgic gait.  *Id.*  At the administrative hearing, plaintiff testified that, although she can do household chores, she has to take breaks every few minutes because of her pain, and that she used to walk everywhere due to not having a driver's license but now she has to take buses or cabs because of difficulty walking and pain.  AT 44, 48.  Similarly, plaintiff had earlier reported in her function report that she engages in daily activities, but experiences pain.  AT 270.  She reported difficulty putting on pants and socks or shaving her legs, that others prepare meals for her sometimes because she cannot stand long enough to cook, that she shops monthly,

18

that she is limited in her abilities to lift, stand, walk, sit, and perform other postural maneuvers because of her pain, and that she uses a cane if she needs to walk long distances on uneven or rough ground.  AT 271-76.  Because it is not clear that the ALJ appropriately considered the limitations in her ability to perform her daily activities when relying on those activities to support her RFC finding, this also does not constitute a sufficient rationale to support her findings.  *See Robert T. S. v. Comm'r of Soc. Sec.*, 21-CV-0038, 2022 WL 1746968, at *16 (N.D.N.Y. May 31, 2022) (Hummel, M.J.) (finding reliance on daily activities unsupported where the ALJ failed to take "account of the caveats and limitations [in performing those activities] he consistently asserted").

    Because I conclude that the ALJ's findings regarding the effects of plaintiff's pain are not supported by substantial evidence, this matter should be remanded for further administrative proceedings, including for an appropriate assessment of the evidence.  Moreover, because the ALJ's error is harmful and pervades all aspects of her RFC finding, including her assessment of plaintiff's subjective reports and her assessment of the opinion evidence, I find no need to perform a detailed analysis of the other claims of error related to those findings raised in plaintiff's briefing.  On remand, the ALJ will be required to perform a new analysis, and to assess

how any changes in those findings will impact his or her ultimate step five finding.

IV. <u>SUMMARY AND ORDER</u>

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I find that the determination did not result from the application of proper legal principles and is not supported by substantial evidence. Accordingly, it is hereby

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 9) be GRANTED, defendant's motion for judgment on the pleadings (Dkt. No. 11) be DENIED, the Commissioner's decision be VACATED, and this matter remanded for further proceedings consistent with this decision and order, without a directed finding of disability, pursuant to sentence four of 42 U.S.C. § 405(g); and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:  February 3, 2023
        Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge